IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

HAKEEM K.  ONALAJA,          )
          )
       Petitioner,          )
          )
vs.          )     Case No. 4:12-cv-1826-WMA-TMP
          )
ERIC HOLDER,          )
ATTORNEY GENERAL, *et al.*,          )
          )
       Respondents.          )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is an action pursuant to 28 U.S.C. § 2241 by an immigration petitioner in custody at the Etowah County Detention Center awaiting removal to Nigeria.[1]  He contends that his constitutional right to due process is being violated because he is being held in custody beyond a reasonable time necessary to accomplish his removal, *see Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), and that he should be released on bond pending removal.  In accordance with the court's usual procedure, the petition was referred to the undersigned magistrate judge for a preliminary review and recommendation.

---

[1]     The record is not entirely clear whether the petitioner is a citizen of Sierra Leone or Nigeria, or both.   His order of deportation directs that he be removed to Sierra Leone or, in the alternative, Nigeria.  (Doc. 6, Ex. 1) He asserts that he was born in Sierra Leone, but the record indicates that Sierra Leone's Embassy has stated that Onalaga is not a citizen of that nation. Petitioner asserts that he is not a citizen of Nigeria, but Nigeria's Embassy apparently both confirmed his citizenship and issued a travel document in 2011, which has since expired.  (Doc. 6, Notices of Failure to Comply, Ex. 2)

<u>PROCEDURAL HISTORY</u>

Petitioner, Hakeem K. Onalaja, first entered the United States in 1980.   On April 9, 2004, he was convicted a committing a lewd act upon a child, and was sentenced to six years in prison. On January 5 2011, petitioner completed his criminal sentence, and was taken into ICE custody.   On February 28, 2011, petitioner was ordered to be removed to Sierra Leone or Nigeria.[2]   Requests for travel documents were sent to the embassies of both Sierra Leone and Nigeria.   Sierra Leone declined, stating that petitioner was not a citizen of that county.   On July 22, 2011, Nigeria issued a travel document for petitioner.   ICE scheduled deportation for August 2, 2011; however, petitioner repeatedly refused to board the aircraft.   The travel document obtained for that flight has expired, and ICE has pending a request for new travel documents.   The Nigerian Embassy has confirmed that the request is pending.   A notice for failure to comply was served on the petition on May 20, 2011, August 4, 2011, November 3, 2011, February 9, 2012, and May 10, 2012.   The respondents have demonstrated that the Government of Nigeria issued a travel document for this petitioner in the past, and  likely will issue a travel document in the reasonably foreseeable future.   (Doc. 5-1).

Onalaja filed the instant *habeas* petition in this court on May 10, 2012, contending that ICE has continued to hold him in custody at the Etowah County Detention Center beyond the time reasonably necessary to carry out his removal, and that he must now be released from custody.   After the court directed the respondents to show cause why the relief should not be granted, they filed a

---

[2]      Although petitioner has pointed out that the assertion in the declaration attached to the respondents' answer states that the final deportation order was entered by an immigration judge in Los Angeles, California, the order attached to Doc. 6 indicates that the immigration court was located in El Paso, Texas.   The order, however, states that the hearing took place "via televideo," which may explain the discrepancy.   In any event, there is no dispute that an order of removal was entered on February 28, 2011.

response on June 1, 2012 (doc. 5), asserting that the petitioner is not entitled to release pending deportation.   Petitioner filed a reply and exhibits in support of his petition (docs. 6 and 7), and the court advised the parties that the petition is ripe for summary disposition.   (Doc. 8).   Petitioner further filed a motion for evidentiary hearing (doc. 10),[3] and a response to the respondents' answer (doc. 9).

## DISCUSSION

The petitioner's argument is that he has been in ICE custody, either undergoing procedures leading to an order of removal or awaiting actual removal since January 2011, a period of over two years, in violation of the United States Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).   In that case the Court had to

> decide whether this post-removal-period statute [8 U.S.C. § 1231(a)(6)] authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal. ... Based on our conclusion that indefinite detention of aliens [who entered the country legally but were later ordered removed] would raise serious constitutional concerns, we construe the statute to contain an implicit "reasonable time" limitation, the application of which is subject to federal-court review.

*Zadvydas v. Davis,* 533 U.S. 678, 682, 121 S. Ct. 2491, 2495, 150 L. Ed. 2d 653 (2001) (italics in original).   The court then held that the post-removal detention statute, 8 U.S.C. § 1231(a)(6), does not authorize the indefinite detention of aliens awaiting removal, but contains an implicit limitation that detention is limited to the time "reasonably necessary" to effectuate the removal.   *Id.* at 689. The constitutionally acceptable rationale for detention awaiting removal is that it assures that the

---

[3]        The motion for hearing is DENIED.

alien will be present and not flee prior to his removal from the United States.  When there is no significant likelihood in the reasonably foreseeable future that such removal will actually occur, the detention serves no constitutional or legal purpose.  Although the Court stated that a "reasonably necessary" period of detention is subject to a presumptive limitation of six months following the entry of a final order of removal, it stressed that even after the six-month period expires,  post-removal detention remains "reasonably necessary" when there is a significant likelihood of removal in the "reasonably foreseeable future."  *Id.* at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").  Only once the alien is able to show that there is no significant likelihood that his removal will occur in the "reasonably foreseeable future" is the government required to rebut the showing that continued detention is not "reasonably necessary."  As the Court explained:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas v. Davis*, 533 U.S. 678, 701, 121 S. Ct. 2491, 2505, 150 L. Ed. 2d 653 (2001).

The Eleventh Circuit Court of Appeals has construed *Zadvydas* to require more of custodial aliens seeking § 2241 relief than simply showing they have been in detention for more than six months.  "[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).  Circuit precedent, therefore, requires some *prima facie* showing by the petitioner that he is not likely to be removed within the reasonably foreseeable future.  Without that additional showing (more than simply being detained for six months), a petitioner is not entitled to § 2241 relief.

Importantly, the period of detention can be tolled and extended if the alien acts to prevent or deter the government's efforts to remove him on a timely basis.  *See* 8 U.S.C. § 1231(a)(1)(C); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 note 4 (11th Cir. 2002)("Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention.").  One district court in this circuit has explained:

> Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Accordingly, the statute expressly permits an alien to be detained longer than the presumptive removal period, where the alien acts or conspires to prevent his removal. Therefore, in considering whether there appears to be no significant likelihood of Petitioner's removal in the reasonably foreseeable future, the Court must consider whether Petitioner's removal has been delayed or extended by Petitioner's own efforts.

*Rodriguez v. Gonzales*, 2007 WL 1655604, *5 (N.D. Fla. June 4, 2007).  Common sense confirms that an alien under a final order of removal may not "play out the [six-month] clock" with stalling tactics and then demand his release on the simple argument that ICE has held him beyond a "reasonably necessary" period for removal.  Such an outcome defeats the entire statutory removal

scheme by forcing the government to release a removable alien who has successfully stalled his removal more than six months.  Such stalling tactics can include the alien's refusal to cooperate with obtaining travel documents from his native country or engaging in serial, bad faith litigation to deter the issuance of travel papers.

In the instant case, the court finds that petitioner initially failed to make a *prima facie* showing that his removal was not significantly likely in the reasonably foreseeable future.  Although he states that he is not a citizen of Nigeria, the documents belie that assertion.  Nigeria has issued a travel document for this petitioner in the past.  The evidence of a foreseeable removal, in itself, is sufficient to prevent this court from granting Onalaga any *habeas* relief.  The only reason that petitioner remains in custody is that he refused to board the plane that was made available to complete the deportation process.  The only obstacle to Onalaga's removal is his own refusal to cooperate.   Accordingly, petitioner is not entitled to § 2241 relief and the instant petition is due to be dismissed.


## RECOMMENDATION

The court finds petitioner has not shown a *prima facie* entitlement to § 2241 *habeas* relief. Accordingly, the magistrate judge RECOMMENDS that the petition be DENIED and DISMISSED.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed

findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the petitioner.

DONE this  4th  day of March, 2013.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE